**UNITED STATES v. BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN et al.**

No. 28926.

United States District Court
N. D. Ohio, E. D.

April 15, 1952.

Writ of Certiorari Granted June 9, 1952.

See 72 S.Ct. 1075.

742

J. Howard McGrath, Holmes Baldridge, Edward H. Hickey, Jess H. Rosenberg, John G. Roberts, all of Washington, D. C., and John J. Kane, Jr., Dist. Atty., Cleveland, Ohio, for plaintiff.

Harold C. Heiss, Charles W. Phillips and C. V. Shuttleworth, all of Cleveland, Ohio, Clifford D. O'Brien, Ruth Weyand, Chicago, Ill., for respondent.

FREED, District Judge (oral opinion).

The nature of the judicial inquiry at this stage of the proceedings is limited in its scope. The application for a preliminary injunction is addressed to the discretion of the Court and seeks to maintain the status quo until such time as the cause may be heard on the merits and the rights of the parties finally determined. It imposes upon this Court the duty merely to determine these problems: Does the controversy involve grave and substantial questions of law and fact and does the defendants' conduct present an immediate threat of irreparable injury to the United States. An examination of the adjudicated cases discloses that the courts have uniformly agreed with this view. It must be clearly understood that the Court is not now called upon to render an ultimate decision as to the Government's right to a permanent injunction to prevent a strike by the defendants.

The United States Government appeals to this Court to issue a preliminary injunction to prevent the three unions of railroad employees from associating and participating in a strike against the Terminal Railroad Association of St. Louis and that portion of the New York Central rail system

which runs west of Buffalo, New York. The Government's complaint is predicated upon Executive Orders Nos. 10141 and 10155 issued by the President on July 8 and August 25 of 1950 respectively. They order the seizure by the United States Government of the operation of a substantial number of the railroads of this country. It is alleged that by virtue of the Executive Orders and the action of the Department of the Army pursuant to the Orders, a strike by the employees of these railroads is a strike against the United States of America.

The defendants challenge the constitutional validity of the seizure orders. The unions deny that seizure as a fact has been accomplished. They assert that it is a mere token or sham seizure and urge that the railroad workers are not, therefore, employees of the United States Government. The jurisdiction of the Court to enjoin the strike whether the workers be Government employees or private civilian employees is also controverted. It is urged that the issuance of an injunction in the manner sought would violate the 5th and 13th Amendments of the Constitution. The unions are inviting this Court to distinguish or disagree with the holding of the Supreme Court in the case of the United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

█ The mere recital of the issues just outlined amply demonstrates that grave and substantial questions are inherent in the cause. Despite the assertions of the defendants that the Court must determine that it has jurisdiction before issuing the injunction, it was clearly established by the Mine Workers case, as Mr. Justice Frankfurter pointed out in his concurring opinion, that the Court is empowered to issue the necessary order, reserving its decision of jurisdiction to a time when, after a full hearing, adequate study and reflection will be afforded to properly interpret and apply the law.

The Court's attention must, therefore, be directed to a consideration of the damage or injury which would be suffered by the United States if the threatened strike be permitted to exist unrestrained until such time as the rights of the parties to this litigation, to the extent that it is the province of the Court, may ultimately be adjudicated.

█ As the Court observed when the temporary restraining order was issued, a large or substantial section of the transportation system, such as the New York Central Railroad constitutes a part of the life line of our nation's existence. The entire testimony compels the Court to conclude that a stoppage on this line and the tie up of the St. Louis terminal would have far reaching and incurably detrimental effect on the security of the United States. It is no answer that alternative routes and other modes of transportation are available to bridge the gap as has been done or may be done in times of flood or other disaster. Such occurrences merely demonstrate the accomplishments of American ingenuity. It may be taken for granted that the substantial area of the United States served by the New York Central Railroad Company and the St. Louis Terminal Railroad Association would not live in a vacuum insofar as transportation is concerned were these two railroad facilities suspended. The question is not whether rerouting or diverting the traffic may possibly be accomplished, but rather would the burden of requiring shippers to overcome the loss of these services and facilities irreparably injure the interests of the United States.

The Government offered as Exhibit No. 16 the strike instructions issued by the unions which among numerous others contained the following provisions:

"In inaugurating the strike it is contemplated that it will be limited for the present to railroads to be duly designated.

"General chairmen and officers of divisions and lodges on all railroads, parties to the several national movements, are hereby alerted to the possibility that the strike may be extended to include their railroads, and it is therefore urged that they make all necessary preparations in anticipation of such developments.

"The instructions and general information contained in this circular are intended to apply not only on the several railroads first to become actually engaged in the strike, but shall govern on every other railroad to which the strike may be later extended. It is therefore suggested that those receiving this circular should thoroughly familiarize themselves with its contents and retain it for their guidance."

From these instructions it is self-evident that eventual spread of the strike was contemplated if a strike on the New York Central and St. Louis Terminal proved ineffective. That the intended work stoppage very probably would cripple the economy and defense effort of the United States is crystal clear in view of these instructions.

While it is true that these same instructions provide that the strike should not interfere with the handling of *finished* war materials, the testimony offered by the Government convinces the Court that the instructions, even if conscientiously obeyed, would be insufficient. No provision is made for handling the substantial number of less than carload shipments of finished materials. The separation and handling of such shipments would be a practical impossibility. Nor is the continual movement of the innumerable raw materials so manifestly essential to defense production assured by the defendants. It cannot be doubted as asserted by the Government, that guns, tanks and aircraft are not the only ingredients essential to the establishment of an inpenctrable defense and the prosecution of our undertaking in Korea. Many aspects of the civilian economy of this nation are so integrated with our military efforts that their impairment may adversely affect our safety.

The harm which defendants charge will result to the unions and their members as a result of the delay to be here imposed cannot compare with or outweigh the gravity of the threatened injury to the safety and welfare of all the people.

█ This Court is compelled to observe that injunction is not the solution to the dispute over wages and working conditions which has existed for a period of three years. That the burden of resolving the differences should be imposed on the courts is not contemplated in the law. The courts must not and should not be used as instruments to impel collective bargaining in good faith. The duty rests with the Government, the railroads and the unions involved. It is apparent, however, that the Court must in the interest of the national safety exercise its power to prevent irreparable injury.

█ Regardless where the sympathy of the Court might be in the dispute, the clear mandate of the law must govern its decision. But one conclusion may be reached under the law: the interests, safety and security of the United States would be grievously impaired and immediate and irreparable injury would be inflicted if a preliminary injunction were not issued to be effective until such time as this Court is called upon to determine finally the complex issues presented and the ultimate rights of the parties. A prompt and complete hearing is essential. To attain that end the Court will be prepared with the cooperation of the parties to expedite a final hearing.

A preliminary injunction will issue, the Government will submit proposed findings of fact and conclusions of law and a proposed order in accordance with the Rules of this Court.